**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles Eugene FORTENBERRY,**
**Defendant–Appellant.**

**No. 91–7209.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 10, 1992.

David Arendall, Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., John E. Ott, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before DUBINA, Circuit Judge, HILL, and CLARK*, Senior Circuit Judges.

DUBINA, Circuit Judge:

Charles Eugene Fortenberry ("Fortenberry") appeals his convictions and sentences on two counts of unlawful possession of a firearm under 18 U.S.C. § 922(g) [1] and one count of obstructing justice under 18 U.S.C. § 1512(b)(3) [2]. For the reasons which follow, we affirm.

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. 18 U.S.C. § 922(g) states in pertinent part:

It shall be unlawful for any person—
    (1) who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year;
. . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

2. 18 U.S.C. § 1512(b)(3) provides:
    (b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

## I. FACTS

In December of 1988, the Piedmont, Alabama, police suspected Fortenberry in the double murder of Jimmy Isaac ("Isaac") and Jack Williams ("Williams"). Pursuant to a properly obtained warrant, authorities searched Fortenberry's apartment for the suspected murder weapon, a Mossberg 500 12–gauge shotgun. No shotgun was found; however, during the search, officers discovered a .22 caliber Westpoint semi-automatic rifle. Because Fortenberry was a convicted felon, officers seized the rifle as evidence of a crime. Fortenberry was neither arrested nor questioned. Thereafter, authorities uncovered further evidence linking Fortenberry to the double murder and the suspected murder weapon. The murder weapon itself was never recovered.

## II. PROCEDURAL HISTORY

A federal grand jury indicted Fortenberry for unlawful possession of a Mossberg 500 12–gauge shotgun (Count Two) and unlawful possession of a Westpoint .22 caliber semi-automatic rifle (Count Three) in violation of 18 U.S.C. § 922(g).[3] The indictment also charged Fortenberry with obstructing justice (Count Four) in violation of 18 U.S.C. § 1512(b)(3).

Before trial, the government notified Fortenberry of its intent to introduce, pursuant to Federal Rules of Evidence 404(b),[4] evidence of Fortenberry's participation in the murders to establish Count Two, the illegal possession of the shotgun used to commit the murders. Fortenberry moved *in limine* to suppress evidence linking him to the double murder as unduly prejudicial under Federal Rules of Evidence 403.[5] He further moved to suppress evidence of three prior felony convictions. Fortenberry also filed objections to the probation officer's sentencing guidelines' calculations. The district court denied Fortenberry's motion *in limine* and withheld ruling on Fortenberry's objections to the guidelines' calculations until sentencing.[6]

At trial, the government presented numerous witnesses linking Fortenberry to the double murder and the murder weapon itself. Primary among them was Fortenberry's codefendant, Clyde Ray Davis ("Davis"). A summary of Davis' testimony proves instructive. Davis, Fortenberry, and Williams planned to murder Isaac.[7] On the night of the murder, the three conspirators went to Davis' house and retrieved a Mossberg 500 12–gauge shotgun. Williams left in his van to pick up Isaac and take him to Hank's Cemetery (the "cemetery"), the intended location of the murder. Fortenberry and Davis left separately in

---

**5.** Fed.R.Evid. 403 states in pertinent part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

**6.** The district court found the murder evidence at issue intrinsic to the crime charged, subject only to Fed.R.Evid. 403 limitations. Thus, Fed.R.Evid. 404(b) was not implicated by the government's proffer and the district court's admission of this evidence.

**7.** The evidence showed bad blood between Fortenberry and Isaac. For instance, in the fall of 1988, Fortenberry confronted Isaac at an establishment called the Red Dog Saloon after Isaac accused him of being homosexual. Fortenberry in turn accused Isaac of shooting a gun at Fortenberry's house. Isaac purportedly replied that he "didn't shoot objects, he shot people." An argument followed, which ended when the proprietor requested Fortenberry to leave the premises.

---

....
(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

**3.** Count One of the indictment related solely to Fortenberry's codefendant, Clyde Ray Davis. Fortenberry also faced capital murder charges in Anniston, Alabama.

**4.** Fed.R.Evid. 404(b) states in pertinent part:
Evidence of other crimes ... is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Davis' truck, taking the Mossberg shotgun with them. En route to the cemetery, the truck broke down. Davis and Fortenberry asked two strangers for a ride back to Davis' house, which one of the strangers provided. From there, Davis and Fortenberry drove another car to the cemetery where they awaited the arrival of Williams and Isaac. When Williams' van appeared, Fortenberry left the car with the Mossberg shotgun. Davis stayed behind. Fortenberry later returned with the shotgun and told Davis, "it's done with." Davis and Fortenberry then returned to Davis' house. There, Fortenberry told Davis that he had killed Williams too. Davis' testimony concluded with his description of his attempts to hide the murder weapon. He stated that he ultimately threw it into a creek.[8]

On cross examination, Davis testified that he was a four-time convicted felon; that he had lied about his criminal record to buy the murder weapon; that, initially, he had lied to the police about his and Fortenberry's involvement in the double murder; that he probably had told the police forty-seven times in a statement that neither he nor Fortenberry had anything to do with the murders; that he had told his family that he had nothing to do with the murders; and that, initially, he falsely told the police that he had sold the suspected murder weapon at an auction.

The government presented further evidence linking Fortenberry to the murders and the murder weapon. Corey Pike ("Pike") testified that, on the night of the murders, two men approached him and a friend. At least one carried a gun. The men stated that their truck had broken down and asked for a ride home. Pike testified that his friend drove the men home. The friend, Shane Mullock, was unavailable to testify.

Jerry Morgan testified that in the fall of 1988 he saw two guns in Fortenberry's house, a .22 rifle and a 12–gauge shotgun. He further testified that on two occasions after the murders, Fortenberry admitted killing Isaac and Williams.

Robert Gerald Smith ("Smith") testified that before the double murder, Fortenberry had asked for help assaulting Isaac. Smith declined to help. Smith also testified that the day following the murders, Fortenberry admitted killing Isaac and Williams. Several other witnesses—Peggy Morgan, Ted Randall Smith, and Pam Foley—testified that Fortenberry admitted killing Isaac and Williams.

Before admitting the foregoing evidence as to Count Two, the district court cautioned the jury that Fortenberry was not on trial for murder but for possessing firearms only. The district court explained that the murder evidence was admissible solely for the jury to determine whether it created an inference that Fortenberry possessed the shotgun in question.

Additional evidence established that Fortenberry had several prior felony convictions and that the firearms which were the subject of the indictment had been transported in interstate commerce.

The jury returned a verdict of guilty on all counts.[9] The district court sentenced Fortenberry to ten years' imprisonment on each count, with each sentence to run consecutively for a total of thirty years. This appeal followed.

## III. DISCUSSION

Fortenberry raises the following four issues on appeal: (1) whether the district court erred in failing to grant his motion *in limine;* (2) whether the evidence supported

---

**8.** Davis led authorities to the creek in which he said he threw the murder weapon. Despite a thorough grid search, no weapon was found.

**9.** The evidence supporting the obstruction of justice conviction was substantial. For example, Jimmy Smith testified that before the murders, Fortenberry accused him of making a statement to the effect that Fortenberry had been "hunting" Isaac. Jimmy Smith testified

that Fortenberry threatened him by saying, "If I go to court and get prosecuted on this, I'll be right back out on the street because all they have is hearsay evidence.... The ones that testify had better be worried but not about me because I didn't do it, but I do know the man who did do it and that man is a dangerous man." Smith stated that he took Fortenberry's statements to be a physical threat against him.

the jury's guilty verdict; (3) whether the district court erred in failing to suppress evidence of certain statements Fortenberry made as to Count Three; and (4) whether the district court properly sentenced Fortenberry pursuant to the United States Sentencing Guidelines (the "sentencing guidelines" or "guidelines"). Our review of the record persuades us that Fortenberry's arguments concerning issues (2) and (3) are meritless and can be affirmed without opinion. However, we are compelled to address issues (1) and (4).

### A. *The District Court Properly Denied Fortenberry's Motion In Limine.*

■ Fortenberry argues that certain evidence linking him to the murder of Isaac and Williams should have been suppressed as violative of Federal Rules of Evidence 403. Specifically, he argues that evidence of the double murder used at trial to establish his illegal possession of a firearm irreparably prejudiced his case before the jury. The government argues that the murder evidence was inextricably intertwined with evidence of the charged offense and, moreover, not unduly prejudicial. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Lehder–Rivas,* 955 F.2d 1510, 1515 (11th Cir. 1992)

■ Generally, evidence of other crimes committed outside of those charged is not admissible. Fed.R.Evid. 404. However, other crimes evidence may be admissible if it is inextricably intertwined with the evidence regarding the charged offense. *United States v. Gomez,* 927 F.2d 1530, 1535 (11th Cir.1991); *United States v. Weeks,* 716 F.2d 830, 832 (11th Cir.1983). Such intrinsic evidence may be excluded nonetheless if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. In *United States v. Norton,* 867 F.2d 1354 (11th Cir.), *cert. denied,* 493 U.S. 871, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989), we stated:

> [T]he court's discretion to exclude evidence under Rule 403 is narrowly circumscribed. "Rule 403 is an extraordinary remedy which should be used only spar-

ingly since it permits the trial court to exclude concededly probative evidence." . . . The balance under the Rule, therefore, should be struck in favor of admissibility.

*Id.* at 1361 (quoting *United States v. Betancourt,* 734 F.2d 750, 757 (11th Cir.), *cert. denied,* 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984)).

■ We agree with the district court that the proffered evidence of Fortenberry's participation in the double murder of Williams and Isaac was inextricably intertwined with evidence of his firearm possession. This evidence was an essential part of the chain of events explaining the context, motive, and set-up of the possession charge and was necessary to complete the story of the crime for the jury. *United States v. Herre,* 930 F.2d 836, 837–38 (11th Cir.1991). The evidence explained Davis' presence with Fortenberry on the day Fortenberry possessed the shotgun. It also explained the context of how and why Fortenberry acquired possession of the shotgun. In short, the murder evidence was an integral part of the circumstances surrounding Fortenberry's illegal possession of the shotgun, and was reasonably necessary to complete the story of the crime. *See United States v. Foster,* 889 F.2d 1049, 1053 (11th Cir.1989); *United States v. Martin,* 794 F.2d 1531, 1532–33 (11th Cir.1986).

■ Moreover, we do not find the other crimes evidence unduly prejudicial. The question implicated by Rule 403 is not whether evidence is prejudicial in and of itself, but whether its probative value "is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. This involves a balancing test. Although the violent and emotional nature of the murder evidence in this case gives us pause, we cannot say the district court abused its discretion by admitting it. The evidence had clear probative value; its prejudicial effect was minimized by the district court's limiting instruction. While "the line between permissible evidence which is inextricably part of a criminal transaction and unduly prejudicial evidence proscribed by Fed.R.Evid. 403 is thin," *United States v. Petary,* 857 F.2d 458, 462 (8th Cir.1988), the line here was not crossed.

Fortenberry also argues that the admitted murder evidence was unnecessary to prove the charged offense. He argues that without the murder evidence the government still had ample proof of his possession of the shotgun. Fortenberry points to the testimony of Davis, Corey Pike, Jerry Morgan and others linking Fortenberry to possession of the shotgun.[10]

While we agree that a reasonable jury could have convicted on this evidence alone, we decline to hold that the government must proffer only enough evidence to allow a jury to convict, but no more. Further, even if the evidence should have been excluded, reversal is not mandated. A district court's erroneous admission of evidence does not warrant reversal if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict. *United States v. Christopher*, 923 F.2d 1545, 1552 (11th Cir.1991); *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991); *see also United States v. Church*, 955 F.2d 688, 703 (11th Cir.1992). The evidence of Fortenberry's possession of the shotgun was overwhelming. Several witnesses, including Davis and Pike, linked Fortenberry to physical possession of the weapon used to murder Isaac and Williams. This evidence, apart from the murder evidence, amply supported Fortenberry's convictions.

### B. *The District Court Properly Sentenced Fortenberry.*

Fortenberry contends that the district court erred by sentencing him to three consecutive ten-year terms. He argues that his sentences contravene the sentencing guidelines' stated purpose of honesty, uniformity, and proportionality. Moreover, he claims that his sentences improperly punish him by imposing the maximum sentence on all three counts of conviction.

A district court's findings of fact are entitled to great deference on appeal and will be affirmed unless clearly erroneous. *United States v. Rodriguez*, 959 F.2d 193, 195 (11th Cir.1992). However, we review the district court's application of the sentencing guidelines *de novo*. *Id.* at 195.

The sentencing guidelines specifically provide for cases such as this where a district court must impose a sentence for multiple convictions from a multi-count indictment. Section 5G1.2(d) states:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrent, except to the extent otherwise required by law.

Here, the district court found Fortenberry's total punishment level to be "45," which carries a guidelines range of life imprisonment.[11] Each count of conviction carries a statutory maximum of ten years' imprisonment. 18 U.S.C. §§ 922(g) and 1512(b)(3). Therefore, because the highest statutory maximum on any count was ten

---

10. Fortenberry seems to make two contradictory arguments. On one hand, he argues that the government did not need to proffer the murder evidence because it already had enough untainted evidence to garner a conviction. However, he argues simultaneously that the government's evidence, *in toto*, was insufficient to warrant conviction. He bases this argument primarily on his assertion that Davis' testimony was incredible. This argument, however, undermines Fortenberry's primary argument and lends support to the government's contention that the additional evidence was necessary to compensate for Davis' alleged incredibility.

11. The district court found by a preponderance of the evidence that Fortenberry used the weapon referred to in Count Two to commit murder. It then determined that the offense level for Count Two had a base level of "9." U.S.S.G. § 2K2.1. It then looked to the underlying conduct, murder with malice aforethought, and increased the base offense level to "43." U.S.S.G. §§ 2K2.1(c), 2X1.1, and 2A1.1(a). This was enhanced two levels because of the obstruction of justice conviction. U.S.S.G. §§ 2J1.2 and 3C1.1 (Application Note 6).

years, and because the total punishment level under the sentencing guidelines was life imprisonment, the district court properly ran Fortenberry's sentences consecutively. Rather than contravene the guidelines' intent, as Fortenberry contends, the district court remained faithful to its express mandate. *See United States v. Joetzki,* 952 F.2d 1090, 1097 (9th Cir.1991) *United States v. Parks,* 924 F.2d 68, 71 (5th Cir. 1991). The district court's sentence did not punish Fortenberry improperly. The guidelines' intent is clear: consecutive sentences for multi-count convictions must be imposed as necessary to equal the guidelines' total punishment level. Accordingly, we find no error in the district court's sentence of three consecutive ten-year terms. For the foregoing reasons, we affirm Fortenberry's convictions and sentences.

AFFIRMED.