46 F.3d 1127
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Allen BOWMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Allen BOWMAN, Defendant-Appellant.
 Nos. 92-5143, 93-5953.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 30, 1994.
Decided Jan. 9, 1995.
 
 ARGUED: Harry A. Smith, III, Jory & Smith, Elkins, WV, for appellant.
 Robert H. McWilliams, Jr., Asst. U.S. Atty., Wheeling, WV, for appellee. ON BRIEF: William D. Wilmoth, U.S. Atty., Wheeling, WV, for appellee.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 William Bowman appeals his convictions and sentence for possession of explosives and conspiracy to commit a car bombing. He also appeals the district court's denial of his motion for a new trial based on the discovery of new evidence. We affirm the convictions and the denial of a new trial, but we vacate the sentence and remand for resentencing.
 
 
 2
 * In April 1989, a Farmington, West Virginia, police officer tried to stop a white car that had an expired inspection sticker. After a chase, the driver eluded the policeman. The police later found the car abandoned in the woods and had it impounded in a local junkyard. The car was promptly stolen from the lot and was next seen parked in nearby Worthington two days later. A Marion County deputy sheriff and a tow truck driver arrived to haul it away. When the car's door was opened, the car exploded. Both men were seriously injured.
 
 
 3
 Bowman and his brother Robert were tried in state court on nineteen counts related to the bombing. They were acquitted. After the acquittals, their brother, John, came forward to cooperate with the police, and William and Robert were indicted by a federal grand jury in November 1990. After an eight-day trial in June, 1991, William was convicted on Counts Two (felon in possession of explosives)[1] and Three (receiving stolen explosives)[2]. The jury was unable to reach a verdict on the other five counts. Robert was acquitted on all counts.
 
 
 4
 In his motion for a new trial, William alleged that Sergeant Marshall Parker of the Marion County Sheriff's Department had lied on the witness stand when he denied taking a briefcase belonging to William during a search in November, 1990. According to William, the briefcase contained exculpatory material in the form of a letter from John to Robert requesting that Robert lie to investigators. No such letter was turned over to the defense pursuant to its pre-trial Brady[3] request.
 
 
 5
 During the hearing, it became clear that Parker had indeed taken the briefcase during the search, although the contents of the briefcase were the subject of conflicting testimony.[4] On October 15, 1991, the district court denied the motion on the ground that the counts of conviction related not to the car bombing but rather to the theft of explosives from a local mining company in February, 1988. Therefore, the defendant failed to meet his burden of demonstrating that any false testimony of Sergeant Parker was material because there was "nothing that reasonably indicates that the jury would have returned a different verdict as to their finding in Counts Two and Three."
 
 
 6
 Shortly thereafter, William was retried on the five counts on which the first jury had failed to reach a verdict. He was convicted on Count Four (conspiracy) and acquitted on the other four counts.[5] On February 10, 1992, he was sentenced to twenty-five years, and he appealed (Appeal No. 92-5143).
 
 
 7
 In July, 1992, while the appeal was pending, Sergeant Parker was tried in federal court on various charges stemming from the investigation of the bombing. The government notified William's counsel about potentially exculpatory evidence that had developed during this trial, and William moved for a new trial based on newly discovered evidence.[6] The court denied the motion on the ground that William failed to show that the alleged contents of the briefcase would have affected the verdict in either trial. William has also appealed this order (Appeal No. 93-5953), and both appeals have been consolidated.
 
 II
 
 8
 Bowman contends that the failure of the government to turn over the briefcase and its contents prior to trial constituted a violation of Brady v. Maryland, 373 U.S. 83 (1963). The government argues that there was no violation and, even if there were, it does not merit a new trial. We find no Brady violation.
 
 
 9
 In order for a Brady violation to occur, the non-disclosed evidence must have been both favorable and material. Id. at 87. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985). Moreover, the defendant has the burden of demonstrating materiality. Maynard v. Dixon, 943 F.2d 407, 417 (4th Cir.1991).
 
 
 10
 Robert testified in the second trial--after he had been acquitted of all charges--and stated that he had no recollection of the letter's contents. William, his fiancee, and her mother all testified that in this letter, John asked Robert to lie and say that he (Robert) had seen the white car at their mother's house a few days prior to the bombing. Bowman argues that John, who was trying to engineer his own release from jail on unrelated charges by cooperating with the authorities investigating the bombing, knew that evidence of the car's presence at this location was important to the government's case because it would show that William had possession of the car after the chase and impoundment. However, other evidence amply proved that Bowman stole the car from the impoundment lot and hid it in his mother's barn. Even if the letter existed, defendant has failed to show that there is a "reasonable probability" that it would have affected the verdicts.[7]
 
 III
 
 11
 Both Counts Two and Three essentially relate to the possession of explosives and blasting caps stolen from a mine near Manley Chapel on February 17, 1988. 18 U.S.C. Sec. 844(a) sets a ten-year maximum term of imprisonment for each of these possession charges. Count Four (second trial) is subject to a five-year maximum under the general conspiracy statute, 18 U.S.C. Sec. 371. Bowman argues that the district court disregarded the statutory maximums in calculating the Guideline sentence. His argument misconstrues the Guidelines concept of "total punishment."
 
 
 12
 With multiple counts of conviction, the first step is to group closely related counts. U.S.S.G. Sec. 3D1.1(a)(1). The court did so correctly, grouping Counts Two and Three and coming up with an offense level of 21. See U.S.S.G. Secs. 3D1.2(a), 3D1.3(a). Because the offense level for the other "group" (Count Four) was higher (36),[8] this became the "combined offense level." U.S.S.G. Sec. 3D1.4.
 
 
 13
 Section 3D1.5, "Determining the Total Punishment," directs the court to "[u]se the combined offense level to determine the appropriate sentence in accordance with the provisions of Chapter Five." The district court chose 300 months, a point within the range of 262-327 months, as the "total punishment." Because the sentence on the count carrying the highest statutory maximum (Count Two or Three) was less than the total punishment, the court ran the sentences consecutively to "produce a combined sentence equal to the total punishment." U.S.S.G. Sec. 5G1.2(d). This is precisely what the Guidelines require. See, e.g., United States v. Fortenberry, 971 F.2d 717 (11th Cir.1992), cert. denied, 113 S.Ct. 1020 (1993) (Guideline range of "life" permitted imposition of three consecutive ten-year sentences, the statutory maximum for each count of conviction).
 
 IV
 
 14
 Bowman had been released from state prison on another conviction on June 11, 1986. The Guidelines require two criminal history points to be added if the "instant offense" was committed less than two years after release from prison on another conviction. U.S.S.G. Sec. 4A1.1(e). The district court found that one of the offenses of conviction was committed before June 11, 1988. This factual finding is subject to review for clear error. United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir.1989).
 
 
 15
 Count Two charged that Bowman, a former felon, possessed explosives "[f]rom sometime between January 29, 1988, through in or around March of 1989." Although he was not charged with stealing the explosives, there was evidence that the explosives were stolen from a local mining company on February 17, 1988, that Bowman had told others that he had obtained the explosives from the mine, and that he had been seen in the spring of 1988 setting off blasting caps. We find no clear error in the court's decision to add two criminal points.
 
 V
 
 16
 After Bowman was arrested on the state charges arising out of the bombing, he attempted to escape from the county jail. On January 16, 1990, he was convicted of a state misdemeanor of attempted escape. William claims that this conviction was improperly used against him twice in the determination of the Guideline sentence range: (1) a two level increase in the offense level for obstruction of justice under Sec. 3C1.1--"If the defendant obstructed the administration of justice during the investigation or prosecution of the instant offense"--and (2) two points factored into his criminal history as a prior sentence under Sec. 4A1.2--" 'prior sentence' means any sentence previously imposed ... for conduct not part of the instant offense." The government concedes that this double counting was erroneous.
 
 
 17
 Effective November 1, 1993, the application notes to U.S.S.G. Sec. 4A1.2 were amended to explain that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of Sec. 1B1.3." U.S.S.G.App. C, amend. 493. The government concedes that this language makes it clear that the escape sentence should not have been considered as a "prior sentence" because the same conduct was also considered as "relevant conduct" in the offense-level computation. Inasmuch as a two-point decrease would lower the criminal history from IV to III, which in turn would lower the sentence range to 235-293 months, a remand for resentencing is necessary.
 
 
 18
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 [1]
 18 U.S.C. Sec. 842(i)(1)
 
 
 [2]
 18 U.S.C. Sec. 842(h)
 
 
 [3]
 Brady v. Maryland, 373 U.S. 83 (1963)
 
 
 [4]
 Bowman makes no claim that any member of the United States Attorney's office was aware of the briefcase or that perjured testimony was intentionally used. See United States v. Griley, 814 F.2d 967, 970-71 (4th Cir.1987) ("Generally, due process is denied if the government knowingly uses perjured testimony against the accused to obtain a conviction")
 
 
 [5]
 The count of conviction in the second federal trial was conspiracy to (1) make an unlawful explosive device (the car bomb), in violation of 26 U.S.C. Sec. 5822, (2) possess an unregistered explosive device, in violation of 26 U.S.C. Sec. 5841, and (3) use an explosive device to damage property used in interstate commerce, all in violation of 18 U.S.C. Sec. 371. The counts of acquittal included manufacturing (Count Six) and possession (Count Seven) of the unregistered car bomb on or about the day prior to the explosion
 
 
 [6]
 William and the government also made a joint motion to this court for a remand of the appeal in 92-5143, which motion was granted in July 1993
 
 
 [7]
 With regard to two other pieces of allegedly exculpatory evidence involving Gloria Fetty and David Coburn, we affirm on the reasoning of the district court. United States v. William Bowman, Crim. Action No. 90-00165-01 (N.D. W.Va. Dec. 3, 1993)
 
 
 [8]
 Using the November 1988 version of the Guidelines, the offense level for Count Four was reached as follows: Under Sec. 2X1.1 (conspiracy), the base offense level for the object offense, assault with intent to commit murder, was used:
 2A2.1(a)--base offense level ............................... 20
2A2.1(b)(1)--more than minimal planning ..................... 2
2A2.1(b)(2)(A), (b)(3)(C)--use of weapon and injuries ....... 9
3A(b)(4)--law enforcement victim ............................ 3
3C1.1--obstruction ......................................... k2
 ------
 36