COX, Circuit Judge,
concurring in part and dissenting in part:
I concur in the court’s opinion except for the holding that the district court’s admission of evidence of the Kentucky fire and Utter’s threat to burn out his tenant mandates a new trial.
The majority’s conclusions about evidence of the Kentucky fire are based upon a misreading of the record. I find no abuse of discretion in the district court’s rulings relative to evidence of the Kentucky fire. In any event neither this evidence nor the relatively inconsequential testimony of Utter’s former tenant had a substantial influence on the outcome of this case.
Prior to trial the government filed written notice pursuant to Fed.R.Crim.P. 12(d)(1) of its intent to offer certain evidence, alleging that such evidence was extrinsic, but “inextricably intertwined”, and also alleging that the evidence was admissible under Rule 404(b). Paragraph 4 of the government’s pretrial notice contained a rather detailed proffer relating to evidence concerning the Kentucky fire. It reads as follows:
4. The government intends to offer evidence that on July 7, 1988, defendant Utter applied for insurance on his residence located in Williamsburg, Kentucky, and signed the name of his wife, Susan Burtner, to the policy. At the time defendant Utter applied for this insurance policy numerous hens encumbered the residence, and defendant Utter was separated from his wife, Susan Burtner, and a divorce. was pending. Shortly after an insurance policy was issued by Kentucky National Insurance Company, neighbors observed men removing the furnace, air conditioning system, and other appliances from defendant Utter’s residence. On August 17, 1988, defendant Utter’s residence in Williamsburg, Kentucky, was destroyed by fire. An inspection of the residence showed mattresses piled against the door and gasoline had been poured inside the dwelling. Employees of Stormy’s Seafood Restaurant will testify that defendant Utter was out of town at the time of the fire.
A witness will testify that prior to the fire a man visited defendant Utter at his residence in New Smyrna Beach, and defendant Utter was observed handing the man a large sum of money. After the fire occurred, the witness asked defendant Utter about the man that had received the money, and defendant Utter stated words to the effect that he had paid the man to burn his home in Williamsburg, Kentucky. Defendant *517 Utter later stated to the witness that the fire had been burned before the man could complete the job. As a result of the fire, the Kentucky National Insurance Company paid the policy limits of approximately $150,000, most of which was used in satisfying liens and judgments against defendant Utter which had encumbered the home. After the Stormy’s Seafood Restaurant fire, defendant Utter instructed the witness not to mention to investigators his comments concerning paying to have his Williams-burg, Kentucky, home burned. Also, in depositions taken in connection with the Stormy’s fire, defendant Utter disavows knowledge of the insurance coverage and payments regarding the Williams-burg, Kentucky, fire.
(R. 1-61 at 2-3.) Following the filing of this notice, Utter filed a motion in limine seeking an order prohibiting the government from introducing any extrinsic acts evidence unless proffered outside the presence of the jury and “only if such evidence meets the standards” of Rule 404(b). (R. 1-62.) The court held a “hearing” on the motion prior to trial, but no evidence relevant to the matter was received. Counsel simply argued the merits of the motion in limine. (R. 4-91 through 117.) Following the hearing the court ruled that the government would be permitted to present evidence of the 1988 fire and the subsequent insurance claim, (R. 5-2), concluding that some of the evidence proffered was “relevant to the indictment” and that evidence of the arson in Kentucky would be admitted under Rule 404(b). (R. 5-6.) Later, when a stipulation evidencing the fact that Utter applied for insurance on the Kentucky home was offered, (R. 7-590), Utter’s counsel again voiced an objection based upon Rules 403 and 404; the objection was implicitly overruled. (R. 7-590.) No further Rule 403 or Rule 404(b) objections to evidence of the Kentucky fire were voiced.
The government sought to prove by the testimony of Jernigan, Utter’s live-in girlfriend, that Utter had paid someone to bum his Kentucky home. She apparently suffered a lapse of memory. The sum total of her testimony was that prior to the Kentucky fire, a strange man came to the house; he was kept outside, and Utter handed him money; and Utter told her that he was loaning the guy some money because he was down and out. (R. 7-629.) After the fire, Jernigan asked Utter if that guy had anything to do with the fire, and Utter said no. (Id. at 630.) The government attempted, without success, to have Jernigan testify that Utter had paid this mystery man to burn his Kentucky home. Failing in that, the government offered no evidence that the Kentucky fire was of incendiary origin. At no time did Utter seek to exclude any of Jernigan’s testimony, or any other evidence, on the ground that the government had failed to establish that the Kentucky house was willfully burned and that Utter procured the burning.
The majority concludes that the trial court abused its discretion by admitting Jemigan’s testimony because no proof was presented that Utter committed the extrinsic act. But the court’s ruling complained of was the ruling on Thursday, December 1, 1994, based upon the government’s pretrial proffer. That ruling, in my view, was well within the trial court’s discretion. As the evidence developed, the government failed to prove either that the Kentucky house was willfully burned, or that Utter procured the burning. But at this later time, after the December 1 hearing, Utter did not ask the trial court to revisit the Rule 404(b) issue. What the majority does, therefore, is find that the trial court’s ruling on Thursday was an abuse of discretion because of what the trial court learned on the following Monday, when Jer-nigan testified.
The majority also concludes that the probative value of the Kentucky fire evidence “is substantially outweighed by the danger of unfair prejudice” and should have been excluded under Fed.R.Evid. 403. I respectfully disagree. The trial court acted well within its discretion in concluding that the evidence proffered was admissible under Rule 404(b) to prove motive and intent. Both motive and intent were issues in the case. The trial court also acted well within its discretion in concluding that this evidence was inextricably intertwined with the charged offense. I find no abuse of discretion in the trial court’s rulings.
*518 Assuming, however, that both the Kentucky fire evidence and the Bosiger testimony that Utter had threatened to “burn her out” were erroneously admitted at trial, Utter’s conviction should not be set aside. In order to establish that the introduction of this evidence requires us to remand for a new trial, Utter must show that the district court abused its discretion in admitting the evidence, and that admission of the evidence affected Utter’s substantial rights. Fed. R.Crim.P. 52(a). Stated otherwise, erroneous admission of this evidence does not warrant reversal “if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict.” United States v. Fortenberry, 971 F.2d 717 (11th Cir.1992) (citations omitted), cert. denied, 506 U.S. 1068, 113 S.Ct. 1020, 122 L.Ed.2d 166 (1993).
In this case it is not at all clear that the Kentucky fire evidence influenced the jury’s decision to find guilt. The government argued in closing only that the 1988 Kentucky fire should have been reported on Utter’s insurance application and was not reported because of Utter’s financial difficulties and the anticipated increase in premiums had the loss been reported. The government did not argue, in closing, that Utter had willfully procured the burning of his Kentucky house, apparently realizing that its proof had fallen short.
In closing argument, the government told the jury that Bosiger’s testimony was offered for the limited purpose of supporting the credibility of witnesses who had testified about Utter’s threats to destroy Stormy’s. As the majority notes, a number of witnesses testified that Utter had threatened to burn Stormy’s. This testimony was not contradicted. Given all of this testimony, it is inconceivable that Bosiger’s relatively inconsequential testimony that Utter had threatened to bum her out at some other time and place substantially influenced the jury’s finding of guilt.
At no point did Utter request a mistrial based on admission of the Kentucky fire evidence. The defense was seemingly satisfied with the government’s decision to make no further attempt to establish that Utter willfully procured the burning of his Kentucky home. Similarly, the defense did not request a mistrial because of the admission of Bosiger’s testimony.
Finally, I disagree with the majority’s conclusion that “this was an extremely close case.” The evidence in this case, viewed in the light most favorable to the government, as we are bound to view it, is substantial indeed. I would affirm Utter’s conviction and reach the challenges to his sentence presented by the government’s cross appeal.