[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12055
Non-Argument Calendar

_____

D.C. Docket No. 1:11-cr-00280-CAP-JFK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN WILLOUGHBY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 30, 2013)

Before WILSON, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Stephen Willoughby appeals his conviction for bulk-cash smuggling in violation of 31 U.S.C. §§ 5316, 5332(a), (b). He argues that, at trial, the district court erred by admitting improper evidence of extrinsic acts. After review, we

conclude that, even if the admission of this evidence constituted an abuse of discretion, such error was harmless. We therefore affirm.

## I.

On February 13, 2011, Customs and Border Protection officers at Atlanta's Hartsfield-Jackson International Airport were on notice to look for Mr. Willoughby because he was scheduled to arrive in Atlanta and had previously transported large amounts of currency into the United States. The officers had been directed to search Mr. Willoughby's luggage and person.

That day, Mr. Willoughby arrived at the airport aboard a flight from London, England. He was accompanied by his wife and young child. CBP Officers James Regas and Christopher Morris observed the family as they exited the plane, walked through the airport's concourse, and approached the passport inspection area. At this checkpoint, the Willoughbys presented a completed CBP declaration form to another CBP officer.[1] The form bore Mr. Willoughby's signature and declared that he and his family were not carrying more than $10,000 in currency. The form was stamped, and the Willoughbys proceeded to the terminal's baggage claim area.

---

[1] All individuals arriving into the United States from a foreign country are required to fill out a CBP declaration form which asks them to declare the total value of all goods purchased or acquired abroad. *See* 19 C.F.R. § 148.13. If a family is traveling together, one member of the family may fill out a declaration form on the group's behalf. *See* 19 C.F.R. § 148.14. The form has a question that specifically asks the individual (or family) whether they are "carrying currency or monetary instruments over $10,000 U.S. or foreign equivalent." *See* CBP Form 6059-B.

Upon arrival, Officer Morris approached the Willoughbys and asked to see their declaration form and passports. It is at this point where the stories diverge.

## A.

Officer Morris testified that he asked Mr. Willoughby to state how much money he was traveling with, and Mr. Willoughby told Officer Morris that he was only carrying $100.00. Officer Morris proceeded to draw two lines on the back of the Willoughbys' declaration form, and instructed Mr. Willoughby to write the amount of currency he was carrying and then sign his name. Mr. Willoughby wrote "100" on the first line and signed his name on the second.

After obtaining this written declaration, Officers Morris and Regas took Mr. Willoughby to a secondary baggage inspection area; he again denied carrying more than $10,000. The officers then began to search Mr. Willoughby's luggage. In those bags, the officers found several bundles of U.S. currency hidden inside various articles of clothing. The luggage was also filled with dryer sheets. And, each time currency was found hidden in the luggage, the officers gave Mr. Willoughby a chance to amend his declaration. He rejected each opportunity to do so.

Later, the officers told Mr. Willoughby to empty his pockets, and Mr. Willoughby pulled from his back pocket a packet of approximately $10,000 held together by a rubber band. Sometime thereafter, Mr. Willoughby pulled out

another two unstamped declaration forms that were stuck together. The first form declared that Mr. Willoughby was not carrying more than $10,000. The other only had "$80,000" written on the back.

Mr. Willoughby admitted to Special Agent Leo Ford that he chose not to declare the money because he did not think CBP needed to know about his finances. He also told Special Agent Ford that he was upset that, when his family last came through customs, they were delayed for over two hours and treated poorly. All told, the officers found over $106,000 in the Willoughbys' luggage and on Mr. Willoughby's person.

**B.**

The Willoughbys, however, presented a different version of these events at trial. They claim that Officer Morris first approached and questioned Mrs. Willoughby while Mr. Willoughby attended to their young child. According to Mrs. Willoughby, she told Officer Morris that she was only carrying "a few hundred dollars." Officer Morris then proceeded to write "100" on the back of the declaration form and asked her to sign the form.

Then, Mr. Willoughby approached the CBP officers before they searched his luggage, apologized for not having gotten his declaration forms stamped at the passport inspection area, and then gave his forms to the officers. He told the officers that it was an honest mistake, and that the form stamped at the passport

4

inspection area had been filled out by Mrs. Willoughby, who did not know about the money in his luggage.[2] Mr. Willoughby also denies that he was given any opportunity to amend his declaration, or that he made any admissions of guilt to Special Agent Ford. In fact, Mr. Willoughby claims that the currency was not hidden at all, and that the officers were able to find it within seconds of opening his suitcase.

## II.

On June 7, 2011 a grand jury returned a two-count indictment against Mr. Willoughby for bulk-cash smuggling and knowingly failing to file a financial disclosure report. The case proceeded to a jury trial.

At trial, Mr. Willoughby testified in his own defense. The government questioned Mr. Willoughby—over the defense's objection[3]—about his relationship with Olefunke Ademoyero. In particular, the government asked Mr. Willoughby whether he was aware that, on February 5, 2009, Ms. Ademoyero had arrived at Hartsfield-Jackson International Airport carrying over $119,000 and had told CBP officers that she had come to Atlanta to meet with Mr. Willoughby, who was her

---

[2] The Willoughbys maintain that, while in London, they had been arguing about whether to ask Mr. Willoughby's family for money to help them with their recent financial difficulties. Nevertheless, Mr. Willoughby testified that he received $102,000 from his parents the night before they returned to Atlanta, but he did not tell his wife about the money because he was still angry at her from the earlier dispute.

[3] Mr. Willoughby objected to the questions because they were irrelevant, dealt with extrinsic matters, and no notice had been given.

5

partner in a car export business. Mr. Willoughby acknowledged that Ms. Ademoyero was a family friend, but he denied having any knowledge as to why Ms. Ademoyero would have made those representations to CBP officials. He also denied that he was Ms. Ademoyero's business partner.

The government also asked Mr. Willoughby if he was aware that Ms. Ademoyero arrived at the airport again in July of 2009 carrying both $101,000 and Mr. Willoughby's contact information. Mr. Willoughby denied having any knowledge of those events.

The government then questioned Mr. Willoughby—without objection from the defense—about his relationship with Prabha Chawla. Mr. Willoughby was asked whether he knew that Mrs. Chawla came to the Atlanta airport carrying $122,000 on June 12, 2009. Mr. Willoughby admitted that he knew Mrs. Chawla through her son, and that he had gone to the airport on that day to pick her up. He also admitted that he had been approached by CBP officials when he was waiting at the airport for Mrs. Chawla. But he denied any knowledge of the amount of money that Mrs. Chawla carried or that he had made any false representations to CBP officials on that day.

In its rebuttal case, the government called CBP Officer Jesse Gillen. Officer Gillen testified, over defense objection,[4] that Mrs. Chawla had told CBP officials

---

[4] Mr. Willoughby argued that the evidence was Rule 404(b) evidence for which the

that she was meeting her nephew, Derek Smith, at baggage claim.[5] Because of the quantity of money, the time of day, and the age of Mrs. Chawla, Officer Gillen escorted Mrs. Chawla to baggage claim for safety reasons. Upon their arrival, Mr. Willoughby approached and greeted Mrs. Chawla. She, however, did not appear to recognize Mr. Willoughby. Officer Gillen then asked Mr. Willoughby for identification, and Mr. Willoughby reticently responded that he had left his identification in the car with his wife.

Officer Gillen also testified that he waited approximately twenty-five minutes for Mrs. Willoughby to bring her husband's identification. Mrs. Willoughby never arrived, and Officer Gillen followed Mr. Willoughby back to his car. At that point, Mr. Willoughby continued to be reluctant to provide Officer Gillen with identification, but he ultimately offered his driver's license, which had been inside his wallet.

The jury convicted Mr. Willoughby of bulk-cash smuggling, but acquitted him of failing to file a financial disclosure report. This appeal followed.

**III**.

On appeal, Mr. Willoughby argues that the district court erred by allowing the questions and admitting the evidence relating to Ms. Ademoyero and Mrs.

---

government had not given notice.

[5] At this point, CBP officers had already verified that Mrs. Chawla was carrying $120,000 in her luggage and $2,000 on her person.

Chawla at trial. We review evidentiary rulings for abuse of discretion. *See United States v. McGarity*, 669 F.3d 1218, 1232 (11th Cir. 2012). But, when a defendant failed to object to the admission of evidence before the district court, we review only for plain error. *See United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003). Under either standard of review, reversal is not warranted if the error was harmless. *See* Fed. R. Crim. P. 52(a).

We assume without deciding that the questions or the evidence regarding Ms. Ademoyero and Mrs. Chawla were improper, and turn to the question of harmless error. An error is harmless if it "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir. 1992) (citation omitted). Based upon our review of the record, any error here was harmless.

First, the government introduced ample independent and untainted evidence at trial to support the jury's verdict. There was the stamped declaration form bearing Mr. Willoughby's signature and answer of "No" to the question of whether he was carrying over $10,000 in currency. There was also testimony from Officers Morris and Regas that (1) Mr. Willoughby had rejected multiple opportunities to amend his declaration both *before* and *after* CBP officers began to search his luggage, (2) the currency in Mr. Willoughby's luggage was well-hidden, (3) Mr. Willoughby's luggage was lined with dryer sheets, (4) bulk-cash smugglers

8

frequently use dryer sheets in an effort to evade detection by dogs trained to smell for currency, and (5) Mr. Willoughby did not present his other, unstamped declaration forms until well after the officers had been searching through his luggage. In addition, and significantly, Special Agent Ford testified that Mr. Willoughby had admitted that he had not declared the correct amount of currency because he did not think that the government needed to know about his finances.

Second, there was evidence that Mr. Willoughby had reasons to not accurately declare that he was entering the United States with $106,000 in cash despite his prior compliance with the financial reporting requirements. It is undisputed that the Willoughbys' financial position had detrimentally changed by February 13, 2011. The Willoughbys had recently been forced to close their failing restaurant in January of 2011 after only one year of operation, yet still had four years remaining on their lease for the building. They also had fallen behind on paying state sales taxes. And they owed money to creditors for both personal and business debts.

Third, Mrs. Willoughby, through her testimony, offered nearly the same version of events as Mr. Willoughby, and none of the questions and testimony concerning Ms. Ademoyero or Mrs. Chawla were or could have been used to call into question Mrs. Willoughby's credibility. Thus, any impact that the challenged evidence may have had on Mr. Willoughby's credibility would not have had a

substantial impact on the outcome because Mr. Willoughby's testimony was in many respects duplicative of the testimony Mrs. Willoughby provided. Simply put, the jury had the opportunity to hear the defense's version of events through witness testimony uninfected by the purportedly inadmissible questions and evidence, and it nevertheless chose to disbelieve it.

## IV.

The evidentiary rulings challenged on appeal by Mr. Willoughby, if anything, amount to harmless error. As such, they cannot serve as a basis for granting Mr. Willoughby a new trial.

**AFFIRMED.**

10