[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10576
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cr-00033-UAMH-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTWAN TYRONE CAMERON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 11, 2013)

Before HULL, JORDAN and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Antwan Tyrone Cameron appeals his conviction and 60-

month sentence for making a false or fictitious statement to a federally licensed

firearm dealer, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).  After a thorough review of the record and briefs, we affirm.

## I.    BACKGROUND

### A.    Attempted Firearm Purchase

In November 2011, Defendant Cameron and Allison Gornail visited Shooters of Jacksonville ("Shooters"), a store that sells firearms and ammunition.  Cameron and Gornail spoke with the store manager.  Gornail expressed an interest in purchasing an AK-47 assault rifle <u>for herself</u>.

The store manager suspected that Gornail was actually purchasing the firearm for Cameron, and not for her own personal use, because Gornail did not know why she was buying the firearm, whereas Cameron was very knowledgeable about the firearm.  After Cameron attempted to pay for the firearm, the store manager asked Cameron to fill out a Bureau of Alcohol, Tobacco, Firearms, and Explosives Form 4473 ("ATF form"), which has to be completed before an individual can buy a firearm.

The ATF form requires a buyer of a firearm to provide his name and address and state whether the buyer is the "actual transferee/buyer" of the firearm.  The ATF form also includes a warning, which provides that "[y]ou are not the actual buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you."

Question 11i of the ATF form asks whether the buyer, here Defendant Cameron, has a conviction for a misdemeanor crime of domestic violence. The instructions for question 11i of the ATF form set forth the statutory definition of a "misdemeanor crime of domestic violence."[1] If a buyer represents on the ATF form that he has a conviction for a misdemeanor crime of domestic violence, the buyer is disqualified from buying a firearm.[2]

In filling out the ATF form, Defendant Cameron represented that he, and not Gornail, was the actual transferee/buyer of the AK-47. Cameron also represented that he had never been convicted in a court of a misdemeanor crime of domestic violence. Finally, Cameron certified that his answers on the ATF form were true and correct and that he read and understood the notices, instructions, and definitions on the form.

After Defendant Cameron completed the form, Shooters conducted a background check of Cameron through the Florida Department of Law Enforcement ("FDLE"). The FDLE reported that Cameron was ineligible to buy

---

[1]A "misdemeanor crime of domestic violence" is statutorily defined, inter alia, as any offense under federal or state law that "has, as an element, the use or attempted use of physical force" and is committed by either (1) a current or former spouse, parent, or guardian of the victim, (2) by a person with whom the victim shares a child in common, (3) by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or (4) by a person similarly situated to a spouse, parent, or guardian of the victim. 18 U.S.C. § 921(a)(33)(A).

[2]A person who has committed a "misdemeanor crime of domestic violence" is prohibited from possessing a firearm. 18 U.S.C. § 922(g)(9).

the firearm.  Thus, Shooters could not sell Cameron the firearm.  Once Cameron and Gornail left Shooters, the store manager notified law enforcement about Cameron's attempt to purchase the AK-47.

## B.    Indictment and Trial

A federal grand jury returned an indictment charging Cameron with making a false or fictitious statement to a federally licensed firearm dealer.  The indictment alleged that, on the ATF form that Cameron completed at Shooters, Cameron falsely represented that he had not been convicted in any court of a misdemeanor crime of domestic violence.

At Cameron's trial, a government witness testified that, in November 2004, Cameron pled guilty to actually and intentionally touching or striking a family or household member, against her will or intentionally causing bodily harm to that person, in violation of Fla. Statutes §§ 784.03 and 741.28.  There was no objection to this testimony.  The government introduced into evidence the information charging Cameron with domestic battery and the judgment.

Later at trial, Cameron testified in his own defense that, in November 2011, Gornail asked for his assistance in purchasing a firearm for her protection.  He went with Gornail to Shooters to assist her in purchasing a firearm.  Cameron also intended to pay for the firearm Gornail selected.  At the store, once Cameron indicated that he would pay for the firearm, a Shooters employee asked Cameron

to fill out an ATF form.  Cameron testified that, on the ATF form, he represented that he was the actual transferee/buyer of the firearm because he believed that, if he did not make that representation, Shooters would not complete the firearm sale.

Cameron further testified that, on the ATF form, he represented that he did not have a prior conviction for a misdemeanor domestic violence conviction because the documents in his possession showed that he only had a prior conviction for battery, not <u>domestic</u> battery.[3]  Furthermore, prior to pleading guilty to what he now knew was domestic battery, he only "vaguely" remembered the judge explaining to him the details about the charges against him.

On cross-examination, the government asked Cameron about the events of October 6, 2004, the date of the domestic battery.  At side bar, Cameron's counsel objected to the government eliciting the underlying details of the domestic battery offense because Cameron had admitted he committed the battery.  Cameron's counsel stated that it was "irrelevant and overly prejudicial to get into the details of the battery."  The district court requested that the government first ask questions that related to Frison's relationship with Cameron and whether Cameron admitted to having committed the battery.  The court stated that, depending on Cameron's answers, the government might not need to address the underlying conduct that

---

[3]Cameron introduced into evidence a criminal history report he obtained from the Jacksonville Sheriff's Office in 2009 and again in 2011.  The exhibit provides that Cameron was arrested for "battery" in October 2004.

5

constituted the battery. Following the court's resolution of his objection, Cameron stated "[o]kay."

The government thus asked Cameron whether he recalled committing a battery on Mikeisha Frison on October 6, 2004, and he answered affirmatively. Cameron clarified that he did not know at the time of the 2011 attempted firearm purchase that he had committed a domestic battery, because he thought that he and Frison had to be "official boyfriend and girlfriend" for his actions toward Frison to constitute domestic battery.

Cameron affirmed that he now knew, "if you batter the mother of your child, that . . . is domestic battery." At the time of the battery, Cameron, however, was uncertain as to whether he was the father of Frison's child. Cameron claimed that, although he had never contested paternity, he had doubts as to whether he was actually the child's father because Frison had cheated on him. Nevertheless, on the date of the battery, Cameron knew that, "at least, according to the child's mother, the birth certificate and anybody else who had ever been told," he was the father of Frison's child. The government then asked whether Frison was pregnant with Cameron's second child at the time of the battery, and Cameron responded affirmatively.

Cameron also testified that he recalled being charged with two offenses in connection with the October 2004 incident. Cameron conceded that his public

defender offered Cameron a plea bargain with respect to one of the charges, which was a felony charge, but he did not want to take that offer.  The following exchange then occurred between the government and Cameron, which led to this discussion of the details of the battery:

> Q.    And why didn't you want to take the offer?
>
> A.    At the time, I felt since I called the police, that I wasn't wrong. But apparently in those situations, I'm wrong, regardless of who actually called the police.
>
> Q.    You're not denying that you struck Mikeisha Frison on October 6th, 2004, are you?
>
> A.    I'm not denying it.  She had a bruise.  I can't say when it became apart, but she had a bruise and, subsequently, we were struggling at a point.
>
> Q.    Okay.  You were struggling and fighting with her?
>
> A.    Yes, sir.

Cameron, however, did not subsequently object to the government's questions or move to strike his responsive testimony.  On appeal, Cameron argues that the district court abused its discretion in admitting this discussion of the details of the battery.[4]

## C.    Jury Instructions and Excused Juror

---

[4]The government argues that we should review this evidentiary issue only for plain error. Because we later conclude that the district court did not abuse its discretion in allowing the admission of the details of the domestic battery offense, we need not decide whether Cameron adequately objected or whether plain error review applies.

Following closing arguments, the district court instructed the jury. The court cautioned that the jury could consider Cameron's prior domestic battery only to determine "whether the elements of the offense charged against the Defendant in the indictment have been established. The fact that the Defendant was previously found guilty of another crime does not mean that he committed the crime for which he is on trial here." The court further cautioned, "[y]ou must not consider this prior conviction for any purpose other than to establish the existence of the prior conviction." The court also cautioned the jury that Cameron was on trial "only for the specific crime charged in the indictment" and that the jury was only to determine whether Cameron was guilty or not guilty of the specific crime.

The district court sent the jury home for the evening with deliberations set to begin the next day. When the district court reconvened proceedings the next morning, it announced that a juror had received a Facebook friend request from Cameron the night before. According to the juror, she had not accepted the request or viewed Cameron's Facebook profile page. Nevertheless, the juror found the friend request unsettling. Therefore, the district court excused the juror and replaced her with an alternate juror.

## D.    Verdict and Sentencing

The jury deliberated and found Cameron guilty of making a false or fictitious statement to a federally licensed firearm dealer.

The probation officer prepared a Presentence Investigation Report ("PSI"), stating that Cameron's base offense level was 20, pursuant to U.S.S.G. § 2K2.1. The probation officer applied a two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, based on Cameron using his personal Facebook account to contact one of the jurors hearing his case. With no further adjustments, Cameron's total offense level was 22, and his criminal history category was III. His advisory guidelines range was 51 to 63 months' imprisonment.

In his written objections and at sentencing, Cameron objected to the two-level enhancement for obstruction of justice, arguing that he lacked the "specific intent to obstruct justice," necessary for application of the enhancement.

The district court found that Cameron obstructed justice by willfully sending a Facebook friend request to a juror who was preparing to deliberate in his trial. The district court thus overruled Cameron's objection and applied the obstruction-of-justice enhancement.

The district court further stated that, even if Cameron had not sent the Facebook friend request, his trial testimony was sufficient to support the

obstruction-of-justice enhancement because he made at least two material false statements during his testimony.  First, Cameron testified that Gornail was actually purchasing the firearm, and second, he testified that he did not know that he had a prior domestic violence conviction.  The district court concluded that both statements were clearly false and were rejected by the jury.  Further, Cameron did not make the false statements as a result of confusion or mistake, but rather with the intent to mislead the jury.  The court determined that these false statements independently warranted the obstruction-of-justice enhancement.

The district court adopted the advisory guidelines range set forth in the PSI and sentenced Cameron to 60 months' imprisonment.  Afterwards, Cameron's counsel stated that Cameron maintained his objection to the obstruction-of-justice enhancement.  However, Cameron's counsel did not specifically object to the court's alternative basis for imposing the enhancement.  Cameron now appeals.

## II.    DISCUSSION

### A.    Admissibility of Evidence about Domestic Battery Conviction

On appeal, Cameron argues that the district court abused its discretion by allowing the government to introduce the details of his 2004 domestic battery conviction because those details were irrelevant and unduly

10

prejudicial. According to Cameron, the only relevant issue at trial was whether Cameron knew that the conviction was for a <u>domestic</u> battery, and thus, the evidence should have been limited to discussion of the relationship between himself and Frison.

We generally review a district court's evidentiary rulings for an abuse of discretion. <u>United States v. Turner</u>, 474 F.3d 1265, 1275 (11th Cir. 2007).

Once a defendant voluntarily testifies on his own behalf, he may be cross-examined as to (1) matters "reasonably related" to the subject matter of the direct examination, and (2) matters affecting credibility. <u>United States v. Pilcher</u>, 672 F.2d 875, 877 (11th Cir. 1982) (internal quotation marks omitted).

Only relevant evidence is admissible, and Federal Rule of Evidence 401 defines "relevant evidence" as evidence having any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401, 402. A party's concession as to a matter sought to be proved in a case may, at times, call for the exclusion of evidence offered to prove the point conceded. <u>Old Chief v. United States</u>, 519 U.S. 172, 184, 117 S. Ct. 644, 652 (1997); <u>see</u> Fed. R. Evid. 401 advisory committee's notes, 1972 Proposed Rules.

Such a ruling, or exclusion, however, should be made on the basis of such considerations as waste of time and undue prejudice under Federal Rule of Evidence 403, rather than under any general requirement that evidence is

11

admissible only where it is in dispute.  Old Chief, 519 U.S. at 184, 117 S. Ct. at 652; see Fed. R. Evid. 401 advisory committee's notes, 1972 Proposed Rules. Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

"Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.  In criminal trials relevant evidence is inherently prejudicial.  Thus, the rule permits exclusion only when unfair prejudice substantially outweighs probative value." United States v. Merrill, 513 F.3d 1293, 1301 (11th Cir. 2008) (brackets and internal quotation marks omitted).  "In doubtful cases, 'the balance under Rule 403 should be struck in favor of admissibility.'"  United States v. Gibson, 708 F.3d 1256, 1282 (11th Cir.) (brackets omitted), cert. denied, (U.S. Oct. 7, 2013) (No. 13-5826).  Limiting instructions minimize the prejudicial effect of evidence. United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992).

Here, evidence of the details of the October 2004 domestic battery was relevant under Rule 401, regardless of whether Cameron conceded that he committed a battery against Frison.  See Old Chief, 519 U.S. at 184, 117 S. Ct. at 652.  Cameron testified that he struck Frison, that he struggled and fought with

Frison, that Frison was pregnant at that time, and that Frison was bruised during the battery. This evidence was relevant as to Cameron's credibility and to establish that Cameron knowingly and falsely represented on the ATF form that he did not have a misdemeanor offense of domestic battery in relation to the October 2004 incident. Evidence showing that Cameron had actually committed the elements of a domestic battery offense, that is, he had struck Frison, who was pregnant with his child at that time, made it more probable that, at the time he filled out the ATF form, he knew he had been convicted of domestic battery not just battery, notwithstanding his direct testimony that he was unaware that he had a conviction for domestic battery. See Fed. R. Evid. 401.

Moreover, the details of the 2004 domestic battery offense had a high probative value that was not substantially outweighed by unfair prejudice, such that the district court should have found the evidence inadmissible. See Merrill, 513 F.3d at 1301. On cross-examination, Cameron testified that he had doubts as to whether Frison was the mother of one of his children, and thus, the government elicited further details about his relationship with Frison, including that she was pregnant with his second child at the time of the domestic battery, in order to show the domestic nature of Cameron's relationship with Frison. Further, Cameron testified that he was unwilling to plead guilty to any crime in connection with the battery incident because he believed that he had not committed any wrongful act

13

against Frison, and this testimony placed in dispute whether Cameron had actually committed a battery against Frison.

Any unfair prejudice resulting from Cameron's testimony of the details of the domestic battery offense was slight, as the jury had already heard the unobjected-to testimony of a government witness providing that Cameron had pled guilty to either intentionally touching or striking Frison against her will or causing her bodily harm. In addition, Cameron volunteered that Frison had a bruise and that he struggled with Frison before the government asked any specific questions as to these details. Finally, the district court's limiting instructions minimized any prejudice arising from the jury hearing the details of the domestic battery conviction. See Fortenberry, 971 F.2d at 721. We conclude that the district court did not abuse its discretion in allowing the admission of the details of the domestic battery offense.

**B.    Obstruction-of-Justice Enhancement**

Cameron argues that the district court clearly erred in finding the government's evidence sufficient to support the two-level obstruction-of-justice enhancement under § 3C1.1 based on his sending a Facebook friend request to a juror. Cameron claims the evidence did not show that his conduct was willful and thus was insufficient to show obstruction of justice.

In reviewing the district court's application of an obstruction-of-justice sentencing enhancement, we review the district court's factual findings for clear error and its application of the sentencing guidelines de novo.  United States v. Doe, 661 F.3d 550, 565 (11th Cir. 2011), cert denied, 132 S. Ct. 1648 (2012).  The government bears the burden of proving the facts needed to support a sentencing enhancement by a preponderance of the evidence.  United States v. Turner, 626 F.3d 566, 572 (11th Cir. 2010).

Section 3C1.1 of the sentencing guidelines provides a two-level enhancement for obstruction of justice where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."  U.S.S.G. § 3C1.1.  The enhancement applies where the defendant, inter alia, (1) directly or indirectly threatens, intimidates, or otherwise unlawfully influences, a juror, or attempts to do so, or (2) commits perjury.  Id., comment. (n.4).  Where the enhancement is based on a defendant's commission of perjury, a district court must find that the elements of perjury are satisfied.  United States v. Ellisor, 522 F.3d 1255, 1276 (11th Cir. 2008).   A witness testifying under oath commits perjury where he gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.  Id. at 1277 n.34.

15

Cameron challenges the district court's imposition of a two-level enhancement for obstruction of justice based on a finding that he willfully attempted to obstruct the administration of justice by sending a juror a Facebook friend request on the eve of deliberations. The district court based the enhancement on this finding, but it also alternatively based the enhancement on the finding that Cameron committed perjury at trial by making at least two materially false statements when he testified that (1) the firearm was not actually being purchased for him, and (2) he did not know his prior conviction was for domestic battery. The district court found that these statements were not made as a result of confusion or mistake, but rather were made with the intent to mislead the jury.

Although Cameron argues that the district court clearly erred in imposing the enhancement on the basis of the Facebook friend request sent to a juror, he does not challenge on appeal the district court's independent alternative basis for the enhancement that he committed perjury by making two materially false statements during his trial. This finding was sufficient to support the application of the enhancement, and by failing to address this finding in his initial brief Cameron has abandoned it on appeal. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that issues not raised in an appellant's initial brief are deemed abandoned). Thus, we uphold the application of the obstruction-of-justice

16

enhancement on the basis of the district court's alternative finding that Cameron committed perjury.

Alternatively, we also conclude there is no merit to Cameron's claims that there was insufficient evidence to support the obstruction-of-justice enhancement. The record evidence adequately supported the district court's findings both as to the Facebook friend request and as to the perjury.

Upon review of the record and consideration of the parties' briefs, we affirm Cameron's conviction and sentence.

**AFFIRMED.**