[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-10679
Non-Argument Calendar
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00162-CR-T-24TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOBBY LAMAR ALBRITTON,
a.k.a. Bobby Albritton,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____
(June 10, 2005)

Before TJOFLAT, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Bobby Lamar Albritton appeals his convictions and 678-month total

sentence imposed after he was found guilty of two counts of bank robbery, in violation of 18 U.S.C. § 2113(a) and (d)(2), two counts of using a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1), and one count of conspiring to possess, brandish and discharge firearms during a crime of violence, in violation of 18 U.S.C. §§ 924(o) and (2). The issues on appeal are: (1) whether the district court erred in permitting the government's peremptory challenge, in light of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (2) whether the district court abused its discretion by allowing a lay government witness to offer his opinion regarding a latent shoeprint; (3) whether the government committed reversible misconduct during its closing argument; (4) whether the district court abused its discretion in failing to grant a new trial based on ineffective assistance of trial counsel; (5) whether the evidence presented at trial was sufficient to support Albritton's convictions; (6) whether the district court erred in finding that Albritton's prior conviction for felony fleeing and eluding was a crime of violence, and thus sentencing Albritton as a career offender pursuant to U.S.S.G. § 4B1.1; and (7) whether the district court's application of U.S.S.G. § 2B3.1 to enhance Albritton's sentence constituted plain error warranting reversal in light of Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d

435 (2000).

Albritton was charged with two counts of bank robbery and two counts of using a firearm during the commission of a violent crime based on his participation in two alleged bank robberies at the Lakeland (Florida) Bank of America and the Mulberry (Florida) Suntrust. Albritton was indicted after his co-conspirator, Ava Jackson, was arrested for trying to cash a stolen traveler's check. While most of his co-conspirators pled to their charges, Albritton chose to go to trial.

We have reviewed the record and considered the briefs of the parties, and conclude that Albritton's convictions must be affirmed. First, we find no reversible error in the district court's rejection of Albritton's Batson challenge and find no need to address this issue. Second, the district court did not abuse its discretion in allowing Agent Harden to testify about a pair of shoes seized from Jackson's apartment that allegedly belonged to Albritton. Agent Harden testified that he had experience tracking foot prints from his days as a border patrol agent in Yuma, Arizona for the Immigration and Naturalization Service ("INS"). Over Albritton's Rule 702 objection, Agent Harden further testified that in his opinion, the latent shoe print found on the teller counter matched the shoe allegedly belonging to Albritton. Pursuant to Albritton's renewed objection to Agent Harden's testimony, the district court issued the following limiting instruction to

3

the jury:

> " . . . [W]ith regard to the testimony of Special Agent Harden, on the issue of whether the . . . shoes made the latent print which was taken from the teller's counter top in the bank robbery, he was quite candid in telling us that he could not say definitely or positively that that was the case.  He did give us his opinion, however, and the basis for that opinion was his perceived similarity which he said he observed between the shoe sole and the print.  You are going to have the same opportunity to make that observation and assessment to examine the actual shoes and the prints he examined.  You'll have the same opportunity to decide whether there is or is not a match between the shoes and the prints.  Therefore, I am instructing you to disregard the opinion of Special Agent Harden on that subject and be guided by your own determination and conclusion as to whether the prints were left by the shoes in Government's Exhibit 24."

Albritton has not offered any evidence that the admission of Agent Harden's testimony, in light of the contemporaneous, specific limiting instruction, altered the outcome of his case.  Instead, substantial evidence presented by other co-conspirators' testimony identifies Albritton as having planned both robberies and places him at both crime scenes.  Under United States v. Fortenberry, 971 F.2d 717, 721-22 (11th Cir. 1992), reversal is not warranted where, as here, untainted evidence is sufficient grounds upon which to base a conviction.

Third, we conclude that the prosecution's comments during closing argument did not constitute reversible misconduct.  During its closing argument, without objection, the prosecution made the following statement regarding Albritton's co-conspirator Scotty Carpenter: "He knows that they committed

4

violent robberies and he's afraid and he didn't want to testify." Also without objection, the prosecution repeatedly referred to Albritton and his co-conspirators as "they," making statements like "Burns stated that she participated with Mr. Albritton in the Suntrust bank robbery. Mr. Carpenter identified as a co-conspirator – he identified everyone, Mr. Albritton in the Suntrust and the Bank of America robberies as to what they did." (emphasis added).

Where, as here, a defendant fails to object to allegedly prejudicial statements made during closing argument, we review for plain error. United States v. Wilson, 149 F.3d 1298, 1302 n.5 (11th Cir. 1998). Albritton has failed to show the that the statements affected his substantial rights because there is substantial evidence that without those statements, Albritton still would have been convicted. Wilson, 149 F.3d at 1301, United States v. Hasner, 340 F.3d 1261, 1275 (11th Cir. 2003) (citation omitted), cert. denied,125 S.Ct. 38 (2004). Accordingly, we affirm on this issue.

Fourth, as the record has not been well-developed, we find that Albritton's ineffective assistance of counsel claim is premature, and we do not consider it here. "We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002)

5

(citing United States v. Khoury, 901 F.2d 948, 969 (11th Cir. 1990)).  The appropriate vehicle for this claim is through a 28 U.S.C. § 2255 motion to vacate.

Fifth, we also reject Albritton's sufficiency of the evidence claim.  At trial, tellers from both the Lakeland Bank of America and the Mulberry Suntrust testified that several disguised men had stormed the banks, carrying guns and announcing that a robbery was in progress.  Two tellers suffered serious injuries during the robberies: a pregnant teller at the Lakeland Bank of America was hit over the head with the butt of a gun with enough force to split her scalp, and a teller at the Suntrust Mulberry suffered a heart attack, which caused permanent heart damage.

In addition to the tellers' testimony, several of Albritton's co-conspirators testified against him.  Jackson and CaCentra Burns, both of whom Albritton had enlisted to "scope out" the Mulberry Suntrust, testified that they had been present when Albritton and his co-conspirators divided the proceeds from the Lakeland Bank of America robbery.  Jackson further testified that she had given Albritton several items to use as a disguise during the robberies.  She also testified that after the Lakeland Bank of America robbery, Albritton had given her three guns to hide in her apartment.  Two participants in the robberies, Scotty Carpenter and DJ Vickers, testified that Albritton had participated in the planning of the robberies,

6

and Carpenter indicated that the whole scheme had been Albritton's idea in the first place. Carpenter further testified that it had been everyone's idea to carry a gun during the robberies, and that they had all carried guns during both robberies. After examining various photographic exhibits proffered by the government, Jackson, Burns, Carpenter, and Vickers were all able to identify a man jumping over the teller counters and actively participating in both robberies as Albritton. Based on this record, we find that sufficient evidence was presented to support Albritton's conviction.

Sixth, we find that the district court did not err in finding that Albritton's prior state court conviction for aggravated fleeing and eluding was a crime of violence, and thus sentencing Albritton as a career offender under U.S.S.G. § 4B1.1 (2000). Under the guidelines, a "crime of violence" is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The Florida aggravated fleeing and eluding statute under which Albritton was convicted requires that a person "[a]s a result of such fleeing or eluding, causes injury to another person or causes damage to any property

7

belonging to another person." Fla. Stat. Ann. § 316.1935(4) (West 1999). Because Albritton's conviction for aggravated fleeing and eluding necessarily required damage to persons or property, we agree that the crime "present[ed] a serious potential risk of physical injury to another." § 4B1.2(a)(2). Cf. Leocal v. Ashcroft, 125 S.Ct. 377, 383 & n.7 (2004) (finding that DUI conviction was not "crime of violence" under 18 U.S.C. § 16, but distinguishing § 16 "crime of violence" definition from that of U.S.S.G. § 4B1.2(a)(2), noting § 4B1.2(a)(2)'s greater focus on the "possible effect of a person's conduct," and that § 4B1.2(a)(2) does not require "use" of force in committing the offense in the manner that § 16 does). Thus, the district court did not err in using Albritton's prior conviction for aggravated fleeing and eluding as a predicate for enhancing Albritton's sentence as a career offender under § 4B1.1.

Finally, we consider Albritton's objection, made for the first time on appeal, that Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004) renders his sentence unlawful. After briefing was completed, the Supreme Court decided Booker v. United States, __ U.S. __, 125 S. Ct. 738 (2005). Because Albritton raised his Blakely/Booker-type challenge for the first time on appeal, we review it for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005); see also Booker, 125 S.Ct. at 769 (both Sixth Amendment and remedial

8

holdings must apply to all cases on direct appeal).

Some facts necessary to support Albritton's sentences — which exceeded the maximum authorized by the facts established by Albritton's guilty plea — were not found by a jury beyond a reasonable doubt or admitted by Albritton, and did not constitute prior convictions. Thus, the sentences violated the Sixth Amendment. Booker, 125 S.Ct. at 756. Additionally, in sentencing Albritton, the district court followed the mandatory Sentencing Guidelines scheme. That, too, was error under Booker. See Rodriguez, 398 F.3d at 1300. Both errors were "plain." See Johnson v. United States, 520 U.S. 461, 468, (1997) ("Where the law at the time of trial was settled and clearly contrary to the law at the time of appeal--it is enough that the error be 'plain' at the time of appellate consideration."); see also Rodriguez, 398 F.3d at 1299. However, Albritton cannot satisfy the third prong of the plain error test under Rodriguez, that his substantial rights have been affected. Having reviewed the transcript of Albritton's sentencing hearing, we find no indication that the district court judge would have sentenced Albritton to a lower sentence if he had been working under an advisory guidelines scheme. Therefore, his Blakely/Booker challenge must fail.

Albritton's conviction and sentence are, therefore, **AFFIRMED.**

9

TJOFLAT, Circuit Judge, concurring specially:

As the court properly holds, in enhancing Albritton's sentences on the basis of facts that were neither found by a jury beyond a reasonable doubt nor admitted by the defendant, the district court committed Booker error that is plain. Ante at ___. Turning to the third prong of the plain-error inquiry, the court "finds no indication" that the court would have sentenced Albritton to lower sentences if it had been working under an advisory rather than a mandatory guidelines scheme. Ante at ___.

As I explain in my dissent to the court's refusal to rehear Rodriguez en banc, the enhancement of a defendant's sentence on the basis of facts the defendant neither admits nor the jury finds beyond a reasonable doubt is structural error; hence, the third prong of the plain-error test is inapplicable. See United States v. Rodriguez, — F.3d —, 2005 WL 895174 (11th Cir. Apr. 19, 2005) (Tjoflat, J., dissenting from the denial of rehearing en banc). We therefore should move to the fourth prong of the plain-error test and consider whether the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736, 113 S. Ct. 1770, 1779, 123 L. Ed.2d 508 (1993). We decline to take that step, however, because the prior-panel rule requires that we adhere to Rodriguez.

10