[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 11, 2006
THOMAS K. KAHN
CLERK

No. 05-14480
Non-Argument Calendar

_____

D. C. Docket No. 04-00094-CR-FTM-33-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUINTON K. COPELAND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 11, 2006)**

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Quinton K. Copeland appeals his conviction and sentence for conspiracy to

possess with intent to distribute Methylenedioxymethamphetamine, ("MDMA" or "ecstasy"), in violation of 21 U.S.C. §§ 841 and 846. On appeal, Copeland first argues that the district court erred when it admitted his co-defendant Ryan Martin's testimony that Martin had previously distributed cocaine and marijuana for Copeland, and that when he became indebted to Copeland as a result of those prior dealings, he agreed, at Copeland's request, to receive a package of MDMA for Copeland. Copeland argues that this testimony was overly prejudicial, was not necessary to the government's case, and that it only served to associate him with cocaine, which biased the jury against him.

Second, Copeland argues that the district court erred by allowing the government to cross-examine him regarding his knowledge of the club scene in Miami and the presence there of ecstasy. Specifically, Copeland argues that the testimony introduced a stereotype about Miami that biased the jurors against him unfairly and may have caused them to convict him on that basis. He further argues that there was no evidence that Fort Myers, where the offense conduct occurred, could not have provided sufficient demand for the shipment of ecstasy.

Finally, Copeland argues that the district court erred by attributing 300 additional ecstasy pills to him where this drug amount was based solely on Martin's testimony which was unreliable, as it was "erratic" and Martin admitted

2

to "puffing" his numbers for the authorities.

I.

We review challenges to the district court's rulings on admission of evidence for an abuse of discretion. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000).

Evidence showing "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would [otherwise] be" is "[r]elevant evidence," and "[a]ll relevant evidence is [generally] admissible" at trial. Fed. R. Evid. 401 & 402. While Federal Rule of Evidence 404 restricts the admission of evidence of "other crimes committed outside of those charged[,] . . . other crimes evidence may be admissible if it is inextricably intertwined with the evidence regarding the charged offense." *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992).

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985). This evidence is nevertheless inadmissible "if its probative value 'is substantially outweighed by the danger of unfair prejudice'" under Federal Rule of Evidence 403. *Fortenberry*,

3

971 F.2d at 721 (quoting Fed. R. Evid. 403).

Copeland challenges Martin's testimony that detailed Martin's version of how he met Copeland and how he claimed to have received a package of ecstasy pills meant for Copeland. Martin could not have clearly described his relationship with Copeland, his own drug dependency, and the reason that he became indebted to Copeland without discussing Copeland's alleged trafficking of marijuana, cocaine, and ecstasy. Accordingly, the district court properly found that this testimony was inextricably intertwined with the evidence regarding the charged offense.

Further, this testimony was highly probative. The court analyzed the issue and found that it was not unfairly prejudicial. Accordingly, the district court did not err by admitting this evidence.

## II.

We review the district court's management of cross-examination for clear abuse of discretion. *United States v. Jones*, 913 F.2d 1552, 1564 (11th Cir. 1990). "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Fed. R. Evid. 611(b). "The trial court has broad discretion under

4

Rule 611(b) to determine the permissible scope of cross-examination . . . ." *Jones*, 913 F.2d at 1564.

On cross-examination, Copeland admitted that Miami had more clubs than Fort Myers, that clubs tended to have more drugs, and that, accordingly, Miami was a larger drug market. Copeland, however, denied knowing anything about ecstasy, denied knowing if ecstasy was prevalent at clubs, and denied ever selling ecstasy. This testimony was relevant to the issue of Copeland's intent to distribute the MDMA Martin had received because both Copeland and Martin had testified that Copeland was from Miami and had ties to that city, and Martin testified that Copeland had sold ecstasy in Miami. The court did not abuse its discretion by allowing the cross-examination.

Moreover, Copeland's argument that the information would prejudice him was that it would associate him, in the minds of the jurors, with negative stereotypes about Miami. Such a stereotype, however, would not have been necessary for the jury to convict Copeland. Martin's testimony was that Copeland was an ecstasy dealer in Fort Myers and Miami. The jury also heard the secret recording of Martin's conversation with Copeland, suggesting that Copeland was involved in narcotics. Further, the government presented evidence of Copeland's attempt to get Martin's father to encourage Martin to keep quiet after Martin's

5

arrest. Finally, Copeland admitted to being a drug dealer. Thus, even if the court did err, that error was harmless and would not warrant reversal. *See Fortenberry*, 971 F.2d at 722.

III.

We review a determination of drug quantity for clear error. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir.), *cert. denied*, 125 S. Ct. 2935, 162 L. Ed 2d 866 (2005). "Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998) (per curiam). Additionally, "[t]he credibility of a witness is in the province of the factfinder and this court will not ordinarily review the factfinder's determination of credibility." *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994) (per curiam).

In addition to the full weight of the second, seized package of ecstasy, the PSI attributed "at least 300 MDMA pills that Martin received from a previous shipment" to Copeland. Copeland argued that the 300 pills should not be added because of Martin's unreliability as a witness. The government, responding in kind, told the court that even if Martin's numbers had fluctuated, a conservative

6

estimate based upon Martin's testimony supported a finding of 300 additional pills. Finally, when the court asked the probation officer about the number, her response was that she had used the "conservative amount" represented in the discovery materials. Accordingly, the court overruled Copeland's objection.

Although the court did not specifically address the reliability of Martin's testimony, its ruling used the smallest quantity that Martin claimed to have been in the first shipment. In combination with the known amount of the seized package, this was a "fair, accurate, and conservative" estimate of the ecstasy properly attributable to Copeland and was not speculative. *Zapata*, 139 F.3d at 1359. Therefore, the district court did not err. *See Rodriguez*, 398 F.3d at 1294, 1297 (affirming sentence for 30,000 ecstasy pills based on testimony that 25,000 to 50,000 pills had been involved in the offense).

**AFFIRMED.**