[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13557
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cr-00035-MW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMMIE LEE UNDERWOOD, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(May 25, 2016)

Before MARCUS, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

Sammie Lee Underwood, III, appeals his conviction for possessing a firearm

and ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1). The offense

conduct arose out of a high-speed chase, which began when officers in a marked

patrol car turned on the car's emergency lights to pull over a Chevrolet Tahoe for a traffic violation.  In response, the Tahoe accelerated and fled for several blocks, ultimately crashing into a house, while the driver and passenger fled on foot. Officers found a loaded hand gun and narcotics in the car, along with a wallet containing the identification of Rashida Davenport.  Through DNA analysis and Davenport's statements, Underwood was later identified as the driver of the car. On appeal, Underwood argues that the district court abused its discretion by: (1) excluding testimony about hearsay statements against interest allegedly made by the passenger in the car Underwood was driving; (2) excluding a line of questioning on cross-examination of the government's case agent about potential federal criminal charges that could have been brought against another witness; and (3) admitting evidence of drugs found near the firearm because the evidence was not inextricably intertwined with the charged offense, and its probative value was outweighed by the risk of undue prejudice.  After thorough review, we affirm.

We review the district court's rulings on admission of evidence for abuse of discretion.  United States v. Gibson, 708 F.3d 1256, 1275 (11th Cir. 2013).  A district court has abused its discretion if it applied an incorrect legal standard or made a finding of fact that was clearly erroneous.  Id.  Under the Federal Rules of Criminal Procedure, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  Fed. R. Crim. P. 52(a).  Therefore,

2

even where an abuse of discretion is shown, we need not reverse a conviction based on an evidentiary error if the error "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." United States v. Fortenberry, 971 F.2d 717, 722 (11th Cir. 1982). Moreover, we allow district courts broad discretion to determine what is permissible for cross-examination and will not reverse except for clear abuse of discretion. United States v. Jones, 913 F.2d 1552, 1564 (11th Cir. 1990).

However, if a defendant fails to preserve an evidentiary ruling by contemporaneously objecting, we review only for plain error. United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007). To show plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. Id. at 1276. If the defendant satisfies the three conditions, we may exercise our discretion to recognize the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. In order to preserve an objection for appeal, the defendant must "raise that point in such clear and simple language that the trial court may not misunderstand it." United States v. Ramirez-Flores, 743 F.3d 816, 821 (11th Cir. 2014) (quotation omitted).

First, we are unpersuaded by Underwood's claim that the district court abused its discretion by excluding hearsay testimony. To be admissible under Federal Rule of Evidence 804(b)(3), a hearsay statement must satisfy three

3

elements: (1) the declarant is unavailable; (2) the statement so far tends to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement is corroborated by circumstances clearly indicating its trustworthiness. United States v. Westry, 524 F.3d 1198, 1214 (11th Cir. 2008). Under a former version of Rule 804(b)(3), we held that the district court should determine trustworthiness "primarily by analysis of two elements: the probable veracity of the in-court witness, and the reliability of the out-of-court declarant." United States v. Alvarez, 584 F.2d 694, 701 (5th Cir. 1978).[1] Thus, in United States v. Jernigan, the district court was entitled to consider the fact that the testifying witness was a prison inmate with a lengthy criminal history, including forgery convictions, in determining trustworthiness. 341 F.3d 1273, 1288 (11th Cir. 2003). We similarly held in United States v. Hendrieth that the district court did not clearly err when it did not admit a hearsay statement because the witness was "completely unworthy of belief." 922 F.2d 748, 750 (11th Cir. 1991).

In 2010, however, the Advisory Committee Notes that accompanied an amended Rule 804(b)(3) stated:

> In assessing whether corroborating circumstances exist, some courts have focused on the credibility of the witness who relates the hearsay statement in court. But the credibility of the witness who relates the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

statement is not a proper factor for the court to consider in assessing corroborating circumstances.  To base admission or exclusion of a hearsay statement on the witness's credibility would usurp the jury's role of determining the credibility of testifying witnesses.

Fed. R. Evid. 804(b)(3) advisory committee's note to 2010 amendment.  Advisory Committee Notes are "well-considered" and "a useful guide in ascertaining the meaning of the Rules."  Tome v. United States, 513 U.S. 150, 160 (1995). "Although not binding, the interpretations in the Advisory Committee Notes are nearly universally accorded great weight in interpreting federal rules." Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132 (11th Cir. 2005) (quotation omitted).

The hearsay statements that Underwood sought to admit in his case involved testimony from a potential witness, Quinn Battles, that the passenger in the Tahoe, Chris Coleman, had told Battles that everything in the car belonged to Coleman. However, we need not decide whether the exclusion of these hearsay statements would now be an abuse of discretion -- under the new Advisory Committee Note -- because the record makes clear that their exclusion amounts to harmless error.  As the record reveals, the evidence connecting Underwood to the firearm found in the car he had been driving was overwhelming.  First, DNA evidence linked the firearm to Underwood, and the firearm was found under the driver's seat of the car that he was driving and had just recently asked to borrow.  Furthermore, Underwood's extreme attempts to flee a routine traffic stop and his statement to the vehicle owner that he had to jump out of the car indicated that he knew the drugs

5

and gun were in the car. Finally, the hearsay statements that Underwood sought to admit -- testimony from Battles that Coleman had said that everything in the car belonged to him -- would not preclude a guilty verdict against Underwood. Indeed, Coleman's ownership of the gun would not preclude Underwood from constructively possessing the firearm, especially since Underwood's conduct suggested he knew about the presence of the drugs and gun in the car.

Next, we reject Underwood's claim that the district court plainly erred by excluding questions during the cross-examination of a government witness. Under the Federal Rules of Evidence, "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination." Fed. R. Evid. 611(b). This discretion is subject to a defendant's right of cross-examination found in the Sixth Amendment's Confrontation Clause. United States v. Lankford, 955 F.2d 1545, 1548 (11th Cir. 1992). "[T]he exposure of a witness' motivation in testifying has been labelled by the Supreme Court as an important function of the Sixth Amendment right to cross-examination." Id.

Here, Underwood argues that he should have been allowed to cross-examine a federal agent regarding whether Rashida Davenport, the witness whose car Underwood had borrowed and crashed, could have been charged with making a false police report to a federal officer for reporting the Tahoe stolen. For starters,

6

we review this claim for plain error, because Underwood did not raise an objection when the district court barred him from questioning the federal agent about potential federal charges against Davenport; rather, the record reveals that Underwood only objected to not being allowed to cross-examine the federal agent about potential state charges against Davenport, a decision the federal agent was not involved in making. On the record here, we cannot find any plain error. Indeed, if the defense had attempted to cross-examine the federal agent about potential federal charges, and the government had objected, the district court would have been entitled to exclude the evidence as exceeding the scope of direct examination. Because, during direct, the federal agent only testified to the original purchase of the firearm, any cross-examination questions about whether the federal government could pursue charges against another witness would have been outside the scope of the direct examination. While exposing a witness's motivation for testifying is an important function of cross-examination, Underwood was incorrectly trying to expose the motivation of Davenport, another witness, not the federal agent who was currently testifying.

Moreover, any error, if one occurred, did not affect Underwood's substantial rights. Davenport admitted during her testimony that she changed her story and decided to cooperate with law enforcement because she did not want to get in trouble. Additionally, as we've mentioned, there was strong evidence against

7

Underwood from other sources, including the DNA evidence and the fact that he fled from a routine traffic stop and the gun was under his seat. Furthermore, the district court was willing to allow Underwood to call the federal agent during his case-in-chief -- when he presumably could have questioned the federal agent about why he did not bring federal charges against Davenport -- but he declined to do so. Thus, we affirm the district court's exclusion of this line of questioning.

Finally, we find no merit to Underwood's argument that the district court abused its discretion by admitting evidence of drugs found near the firearm. Evidence of criminal activity is intrinsic, and thus, outside the scope of Rule 404(b), "when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (quotations omitted). Evidence that is not part of the charged crime but pertains to "context, motive, and set-up of the crime" may be properly admitted if it is "linked in time and circumstances with the charged crime, or forms an integral and natural part of account of the crime, or is necessary to complete the story of the crime for the jury." Id. (quotation omitted).

Regardless of whether the evidence of criminal activity other than the charged offense is intrinsic or extrinsic, it must pass Federal Rule of Evidence 403

in order to be admissible.  Edouard, 485 F.3d at 1344.  This rule permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In reviewing the third prong of Rule 404(b) admissibility under Rule 403, we "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact."  Edouard, 485 F.3d at 1344 n.8 (11th Cir. 2007) (quotation omitted).  We've held that jury instructions regarding the proper use of Rule 404(b) evidence can minimize the evidence's prejudicial impact.  United States v. Brown, 665 F.3d 1239, 1247 (11th Cir. 2011).

Here, the district court did not abuse its discretion by admitting the evidence of illegal substances found in the vehicle.  First, the drug evidence was intrinsic evidence, since it formed a natural and integral part of the account of the crime and was sufficiently "linked in time and circumstances" to help provide context for the firearm.  The drugs and firearm were found at the same time and in the same place. The drugs provided context for why two people would flee a routine traffic stop and bail out of a still-moving vehicle in order to avoid the police.  They also provided context for why the firearm might have been in the vehicle.  Therefore, the drug evidence was necessary to complete the story of the crime for the jury.

9

Second, the admission of drug evidence did not violate Rule 403. The drugs were of probative value because they provided context for why the firearm was present and why Underwood would flee from police, and later, the vehicle. While the drug evidence may have risked being unfairly prejudicial because the jury might equate the presence of drugs as an overall showing of guilt, the district court gave the jury a limiting instruction about how it was to use the drug evidence. This instruction served to limit the prejudicial impact of the drug evidence, and as a result, the district court did not abuse its discretion by finding that the probative value of the drug evidence was not substantially outweighed by unfair prejudice.

In any event, even if the drug evidence was admitted in error, that error was harmless. As we've already detailed, the government's other evidence -- including the DNA evidence, the location of the firearm, and Underwood's behavior -- was strong. Therefore, the drug evidence did not have a substantial effect on the jury's verdict.

**AFFIRMED**.