[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12420

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILLIAM GRANT OWENS,
a.k.a Whip,
a.k.a Surge,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

D.C. Docket No. 1:20-cr-00122-TFM-29

————————————

Before JILL PRYOR, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

William Grant Owens appeals his conviction on eight counts related to his participation in a long-running drug conspiracy. Owens presents two arguments on appeal: First, he argues that his Sixth Amendment rights were violated when his counsel stipulated over his objection that certain substances linked to Owens tested positive for illegal drugs. Second, he contends that the court plainly erred under Federal Rule of Evidence 404(b) when it admitted evidence that Owens frequently exchanged drugs for sexual favors.

After careful review, we reject both arguments. First, Owens's Sixth Amendment rights were not violated because the decision to stipulate to the test results was a tactical decision reserved for his counsel. Second, the district court did not plainly err in admitting evidence of Owens's sexual activities because such evidence was intrinsic to the charged offenses. We therefore affirm Owens's conviction on all counts.

## I.    BACKGROUND

Owens was indicted alongside 38 codefendants for participating in a vast, multi-year conspiracy to distribute fentanyl, heroin, and methamphetamine throughout Mobile County, Alabama. The operative indictment charged Owens with ten counts:

conspiring to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 (Count One), possessing with intent to distribute various controlled substances in violation of 21 U.S.C. § 841(a)(1) (Counts Two, Three, Four, Five, Six, Seven, Eight, and Nine), and unlawfully intimidating a witness in violation of 18 U.S.C. § 1512(b)(1) (Count Twelve).[1] The indictment also alleged that Owens's drug activity resulted in the overdose death of one of his customers, Kelsey Johnston, subjecting him to the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(C).

At trial, the government presented evidence that Owens was a prolific member of the Crossley Hills Drug Trafficking Organization who reveled in the power he held over his customers and exploited their addictions for money and sex. Witnesses—many of them former codefendants—testified that Owens directed or participated in "[h]undreds, if not thousands" of drug deals between 2016 and 2020, selling at least fifteen kilograms of methamphetamine and two to three kilograms of heroin and fentanyl during that period. Doc. 2011 at 140.[2] Many of these transactions took place at the Rodeway Inn, a "dope hotel" frequented by "[b]uyers, addicts, [and] prostitutes," where Owens often set up shop. Doc. 2012 at 5; Doc. 2011 at 143.

---

[1] Counts Ten and Eleven of the operative indictment were brought solely against Owens's codefendants.

[2] "Doc." numbers refer to the district court's docket entries.

Prior to his arrest, law enforcement linked Owens to this drug activity through a series of controlled buys, all but one of which were videorecorded and shown to the jury. On August 21, 2018, for example, the Mobile County Sheriff's Department used a confidential informant to purchase 3.2 grams of methamphetamine from Owens and Jessica Tubb, one of his primary coconspirators. The next day, deputies executed a search warrant on the duo's hotel room, where they found another 4.1 grams of methamphetamine in Tubb's bra. One week later, the Mobile Police Department conducted its own controlled buy from Owens, this time yielding 0.9 grams of methamphetamine and 0.4 grams of heroin.[3] Owens was also involved in two separate traffic stops, during which officers found more drugs on the road just outside of his vehicle. Although Owens continued to maintain his innocence on other grounds, his counsel stipulated at trial that these substances tested positive for illegal drugs.

In addition to traditional drug sales, witnesses testified that Owens would frequently allow or even require his female customers to pay for their drugs with sexual acts—especially when they were "dope sick" and desperate for their next high. This practice was so common, in fact, that Owens kept two separate caches of

---

[3] Officer Shawn Wood testified that the Mobile Police Department conducted a second controlled buy on September 12, 2018, during which Owens sold 0.3 grams of heroin to a confidential informant. This conduct was charged in Count Two of the operative indictment. According to Officer Wood, the video recording of this controlled buy was lost in a computer crash before he was able to review it. The jury ultimately acquitted Owens of Count Two.

drugs: one to sell and one to exchange for sex, the latter of which he called his "freak-and-geek sack." Doc. 2009 at 105. Sometimes, in lieu of having sex, Owens would withhold drugs from female addicts and masturbate in front of them as they writhed from withdrawals. According to one witness, watching addicts beg for drugs "was like a power trip" for Owens, "almost like he was getting off on it." Doc. 2010 at 149.

Witnesses also described multiple instances in which Owens "push[ed]" women to take heroin and fentanyl and then "force[d] himself on them" when the drugs took hold. *Id.* at 151. On at least one occasion, this practice turned deadly. At trial, Tubb told the jury about a woman named Kelsey Johnston who came to the Rodeway Inn looking for methamphetamine. Owens, who wanted "[t]o have sex" with Johnston, gave her heroin laced with fentanyl instead. Doc. 2011 at 184. Almost immediately after taking the drugs, Johnston—who was not a known heroin or fentanyl user—began to overdose. When other witnesses attempted to call 911, they said, Owens "hit the receiver." *Id.* at 242. He then sat in a chair with "his hands in his pants" and "play[ed] with [himself]" while they tried to revive Johnston. *Id.* at 259. Owens eventually walked up to Tubb's hotel room and asked to have sex with her instead. Johnston was found dead the next day.

After the government's case, Owens took the stand as the sole witness in his defense. He adamantly denied selling drugs and insisted that the witnesses against him were lying. With respect to the controlled buys, Owens pointed out that he was never seen on

video exchanging drugs for money. Finally, he suggested that any incriminating audio evidence had been altered by the government.

The jury convicted Owens of eight of the ten counts against him.[4] The jury also found that Owens's conduct in Counts One and Six resulted in the death of or serious bodily injury to Johnston. Owens now appeals his conviction.

## II.     STANDARD OF REVIEW

We review *de novo* whether a defendant's Sixth Amendment rights were violated. *United States v. Terry*, 60 F.3d 1541, 1543 (11th Cir. 1995). Counsel's admission of a defendant's guilt over the defendant's express objection is a structural error, which cannot be harmless. *McCoy v. Louisiana*, 138 S. Ct. 1500, 1511 (2018).

We generally review a district court's evidentiary rulings for abuse of discretion. *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003). If a criminal defendant raises an argument on appeal regarding an objection that he should have raised below but did not, we review for plain error. *United States v. Hoffman*, 710 F.3d 1228, 1231–32 (11th Cir. 2013). Under plain error review, the defendant has the burden to show that "there is (1) error (2) that is plain and (3) that affects substantial rights." *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003) (alteration adopted) (internal quotation marks omitted). The defendant then must show that the error "seriously affect[ed] the fairness, integrity, or public reputation of

---

[4] The jury found Owens not guilty of Counts Two and Twelve.

judicial proceedings." *Id.* (internal quotation marks omitted). Without explicit, on-point language in the relevant statute, "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving" the issue. *United States v. Kushmaul*, 984 F.3d 1359, 1363 (11th Cir. 2021) (internal quotation marks omitted).

## III.    DISCUSSION

On appeal, Owens argues that his Sixth Amendment rights were violated when his counsel stipulated that the substances recovered by law enforcement tested positive for illegal drugs and that the court plainly erred when it admitted evidence of Owens's sexual acts. We address each of these arguments in turn.

### A.  Owens's Sixth Amendment Rights Were Not Violated by His Counsel's Stipulations

On the first day of Owens's trial, the jury heard from three law enforcement officers who testified about illegal drugs they recovered from Owens. After each portion of relevant testimony, the government read a stipulation to the jury confirming that Owens "admit[ted] and agree[d] that the substance[s] seized" by law enforcement had been "analyzed and tested" at a forensic laboratory and that each substance tested positive for illegal drugs. Doc. 2008 at 90. Owens did not object to these stipulations, and the court instructed the jury that it "must accept [them] as true and proven for the purposes of this litigation." *Id.* at 127.

The next day, before testimony resumed, Owens protested that he had "never agreed" to stipulate to the drug test results and

worried that the jury would interpret those stipulations as an admission of guilt. Doc. 2009 at 6.[5] The court explained to Owens that "once a client decides to go to trial, there are some decisions that the lawyer gets to make" and that stipulating to test results was one of those decisions. *Id.* at 5. In light of Owens's concerns, however, the court informed the jury that Owens had only stipulated to the content of the test results and had "not concede[d] a connection between [himself] and the drugs." *Id.* at 9. The government went on to introduce two more test-result stipulations without objection.

Owens now argues that his trial counsel's stipulations "interfered with [his] right to determine the strategic objectives of his trial," amounting to "structural error" under the Sixth Amendment. Appellant's Br. at 16. We are not convinced.

The Sixth Amendment guarantees the assistance of counsel to each criminal defendant. *McCoy*, 138 S. Ct. at 1507. Although the defendant has the ultimate authority to make "fundamental decisions" about his case, such as whether to plead guilty or assert his innocence, *United States v. Burke*, 257 F.3d 1321, 1323 (11th Cir. 2001), decisions relating to trial management—including evidentiary issues "and what agreements to conclude regarding the admission of evidence"—are left to the discretion of his counsel,

---

[5] Owens's counsel denied this, insisting to the court that he "talked to Mr. Owens about possible stipulations" before they were introduced and that Owens had responded, "you are my lawyer; I'll leave that up to you." Doc. 2009 at 4.

*Gonzalez v. United States*, 553 U.S. 242, 248 (2008) (internal quotation marks omitted). Because the stipulations at issue in this case fall into the latter category, they did not violate Owens's Sixth Amendment rights.

Owens's reliance on *McCoy* is unavailing. In that case, McCoy was charged with three counts of first-degree murder. 138 S. Ct. at 1506. McCoy's counsel—over his client's objections—told the jury in his opening statement that McCoy had in fact committed the murders, emphasizing McCoy's "serious mental and emotional issues" in an unsuccessful attempt to avoid the death penalty. *Id.* at 1507 (internal quotation marks omitted). Finding error, the Supreme Court held that the Sixth Amendment granted criminal defendants "the right to insist that counsel refrain from admitting guilt." *Id.* at 1505. Although it reaffirmed that "[t]rial management is the lawyer's province," *id.* at 1508, the Court emphasized that "it is the defendant's prerogative, not counsel's, to decide on the objective of his defense"—that is, "to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence" and aim for an acquittal, *id.* at 1505.

Here, Owens *was* permitted to decide the objective of his defense. At Owens's direction, his counsel asserted his innocence and put the government to the task of proving his guilt beyond a reasonable doubt. Contrary to Owens's argument on appeal, his counsel's decision to stipulate to the drug-test results did not effectively concede his guilt. Instead, Owens's counsel made a tactical decision to avoid repetitive, potentially distracting testimony about

lab testing and force the government to prove that Owens both "knowingly possessed" and "intended to distribute" the drugs in question. *United States v. Amede*, 977 F.3d 1086, 1099 (11th Cir. 2020) (quotation marks omitted) (outlining the elements of a § 841(a)(1) charge). Because the decision to stipulate to the test results amounted to a "strategic choice[] about how best to *achieve* [Owens's] objectives" rather than a unilateral determination of what those objectives were, Owens's Sixth Amendment rights were not disturbed. *McCoy*, 138 S. Ct. at 1508 (emphasis in original); *see also Poole v. United States*, 832 F.2d 561, 564 (11th Cir. 1987) (holding that stipulating to "such trivial and easily proven matters as to whether banks were federally insured" in a federal robbery case was "a tactical decision" reserved for counsel).

### B. *The District Court Did Not Plainly Err in Admitting Evidence of Owens's Sexual Activities*

During its case-in-chief, the government presented extensive evidence of Owens's sexual misdeeds, including numerous occasions in which he exchanged drugs for sex, used drugs to facilitate his sexual advances, or otherwise sexually exploited his drug-addicted customers. Owens argues that the district court plainly erred when it allowed this evidence before the jury because it "was not probative of the charged offenses and [its] prejudicial effect was obvious." Appellant's Br. at 10. Moreover, Owens says, these "lurid details were text-book bad acts prohibited by Rule 404(b)." *Id.* at 16. Owens is correct that the actions attributed to him were "nothing short of repugnant" and almost certainly prejudiced his

defense. *Id.* at 24. But they were also highly probative of the offenses charged. Because this evidence was intrinsic to the story of Owens's drug distribution activities and provided a motive for his participation in the overall conspiracy, its admission did not amount to plain error.[6]

Generally, evidence relevant to a charged offense is admissible at trial unless provided otherwise by statute, the Constitution, the Federal Rules of Evidence, or the Supreme Court. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Rule 404(b) provides an important carve-out to this framework. It instructs that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence can be used for other purposes, "such as proving motive, opportunity, intent,

---

[6] Owens and the government agree that, because Owens did not object to this evidence, plain error review applies. Before trial, however, Owens did move to exclude testimony alleging that he was masturbating during Johnston's overdose. The district court denied that motion but granted Owens a "standing objection" to "the [Rule] 404(b) stuff" at trial, Doc. 210 at 180. Curiously, in his brief before this Court, Owens does not appear to include that testimony in his outline of improperly admitted evidence. Assuming that Owens's callously timed masturbation is one of the "lurid details" forming the basis of this appeal, Appellant's Br. at 16, his argument still fails, even under an abuse of discretion standard.

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In addition, evidence of a defendant's conduct that is "intrinsic" to "the charged offenses" may be admissible even where it would otherwise be barred by Rule 404(b). *United States v. Wenxia Man*, 891 F.3d 1253, 1273 (11th Cir. 2018) (internal quotation marks omitted). "[I]ntrinsic evidence is admissible if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (internal quotation marks omitted). Evidence that is not part of the charged offenses but "pertain[s] to the chain of events explaining the context, motive, and set-up of the crime" is admissible if it is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *Id.* (quotation marks omitted).

"All admissible evidence, whether intrinsic or extrinsic, must be weighed" under Rule 403. *Id.* That rule permits a district court to exclude relevant evidence if the danger of unfair prejudice, among other things, substantially outweighs its probative value. Fed. R. Evid. 403. Exclusion under Rule 403 is an extraordinary remedy that courts should employ "only sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (alteration adopted) (internal quotation marks omitted).

Here, the district court did not err in admitting evidence of Owens's sexual acts because that evidence was an "essential part of the chain of events explaining the context, motive, and set-up" of Owens's conspiracy to distribute—and actual distribution of—controlled substances. *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992). Specifically, evidence showed that Owens accepted both money and sex as payment for drugs that he distributed in furtherance of the conspiracy. *See United States v. Dixon*, 901 F.3d 1322, 1345 (11th Cir. 2018) (holding that evidence of uncharged robberies was intrinsic to the charged drug conspiracy because the government "described a conspiracy in which the money for the drugs came from robberies and the status of members was tied to robberies and violence" (alteration adopted) (internal quotation marks omitted)). The evidence also showed that Owens was motivated to join the conspiracy at least in part by his desire for power and sexual pleasure. *See United States v. Lehder-Rivas*, 955 F.2d 1510, 1518 (11th Cir. 1992) (holding that evidence that the defendant admired Hitler and other "revolutionaries" was intrinsic to a drug conspiracy charge because it supported the government's argument that he was motivated by a desire to "facilitate the demise of the United States by importing large quantities of cocaine").

Further, the evidence was not barred by Rule 403. Although it was undoubtedly inflammatory, any danger of unfair prejudice did not substantially outweigh its significant probative value. *See Fortenberry*, 971 F.2d at 721 (holding that evidence linking the defendant to a double murder was intrinsic to his gun possession

charge and was not unfairly prejudicial, despite the "violent and emotional nature" of the evidence). Moreover, the fact that Owens was acquitted of two counts against him suggests that the jury was able to assess his guilt fairly and objectively, even in the face of scandalizing evidence. *See United States v. Loyd*, 743 F.2d 1555, 1563–64 (11th Cir. 1984) (noting that the jury's decision to acquit on certain counts shows that it "meticulously sifted the evidence" (internal quotation marks omitted)).

**AFFIRMED.**